FORM 1

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

FILED 2004 OCT 29 A 11: 43
U.S. DISTRICT COURT
HARTFORD, CT.

CATHERINE SANTOSSIO, ET AL

v.                                  CIVIL CASE NO.   3:01CV1460 (RNC)

CITY OF BRIDGEPORT, ET AL

### NOTICE OF APPEAL

1. Pursuant to F. R. A. P. 4(a)(1), __Catherine Santossio and Glen Prentice__ hereby gives notice and
(appealing party)
appeals to the United States Court of Appeals for the Second Circuit from the following
Judgment or Order (attach the Judgment or Order):

Ruling and Order granting defendant City of Bridgeport's Motion for Summary Judgment and Judgment entered in favor of defendants.

2. The Judgment /Order in this action was entered on __September 30, 2004__.
(date)

_____
Signature
Susan King Shaw
King and Shaw, LLC
Print Name

94 Prospect Street

New Haven, CT  06511
Address

Date: October 29, 2004

203-784-0329
Telephone Number

Note: You may use this form to take an appeal provided that it is received by the Office of the Clerk of the U.S. District Court within 30 days of the date on which the judgment was entered (60 days if the United States or an officer or agency of the United States is a party).

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

CATHERINE SANTOSSIO, et al.,        :        2004 SEP 30  A 11: 10
    Plaintiffs,                      :
                                     :        U.S. DISTRICT COURT
V.                                   :        HARTFORD, CT
                                     :        CASE NO. 3:01CV1460(RNC)
CITY OF BRIDGEPORT, et al.,          :
    Defendants.                      :

### RULING AND ORDER

Catherine Santossio, a civilian employee of the Bridgeport Police Department ("BPD"), and Glenn Prentice, a BPD sergeant, bring this action under 42 U.S.C. § 1983 alleging violations of their rights under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment by the City of Bridgeport and five individuals who were employed by BPD at the time of the events in question, Pablo Otero, Robert Studivant, Arthur Carter, Thomas Sweeney and Hector Torres. Both plaintiffs are white; all the defendants except Sweeney are members of the Bridgeport Guardians, a fraternal organization of minority police officers. The claims arise out of an alleged sexual assault on Santossio by Otero while the two were on duty, and alleged retaliation by the defendants against Santossio for filing an internal complaint against Otero and against Prentice for testifying in support of the complaint at a hearing before a review board. The defendants, with the exception of Otero, have moved for summary judgment on the counts against them. For the reasons stated

below, the motion is granted.

I. Facts

The pleadings, depositions, answers to interrogatories and affidavits on file, viewed most favorably to the plaintiffs, show the following. On August 5, 1998, Otero told Santossio he needed to talk to her about something and led her to a deserted file room. There, he grabbed the back of her head and kissed her, holding her in place. While kissing her, he unzipped his trousers, held her hand against his penis and said something about his "chocolate," which she understood to be a demand for oral sex. She resisted and after a period of time he stopped. They then left the file room, and were seen leaving by Captain Arthur Carter. Santossio confronted Otero about the incident later that day. He responded that she had been "asking for that all year."

Santossio made no report of the assault for about a month, but she did tell a secretary about it the same day. At the end of August, Santossio decided to gather evidence against Otero. In early September, she spoke with him while wearing a concealed microcassette recorder, hoping he would admit to having assaulted her. After some brief conversation, he abruptly said that if she was not transferred off the third floor (where they both worked), he would "rape your ass." He also said that he liked a blouse she wore, "the red one with you all beaming."

2

On September 7, Santossio discussed the assault with Prentice. He listened to the tape recording and was able to make out the "rape your ass" remark. He was horrified and urged Santossio to report Otero to Joseph Sweeney, Bridgeport's chief of police at the time.

On September 16, 1998, Santossio presented a written complaint against Otero to Sweeney, who was Bridgeport's chief of police at the time. Sweeney proceeded to investigate the matter himself. He interviewed Santossio and others, including Carter. He also listened to the microcassette tape.

On October 8, Sweeney informed Otero of the charges and ordered him to answer them. Otero denied committing an assault and claimed that he and Santossio had engaged in consensual kissing. At or around this time, Sweeney transferred Otero so he would no longer work near Santossio, and ordered him to avoid contact with her.

On October 15, Sweeney turned the matter over to Captain Robert Studivant at the Office of Internal Affairs (OIA) for further investigation. Studivant received the microcassette tape from Sweeney and sent it to the FBI for cleaning. The FBI failed to retrieve information from the tape and destroyed it in the course of cleaning it.[1]

---

[1] Santossio claims that Studivant deliberately sought the destruction of the tape, but she has no evidence to support her
(continued...)

3

In February 1999, Studivant completed his investigation. He informed Sweeney that Otero had violated BPD's sexual harassment policy, and recommended that he be disciplined. Sweeney then filed sexual harassment charges against Otero with the Bridgeport Board of Police Commissioners, a civilian review board.

In August 1999, before the Board reached the matter, BPD's labor relations department tried to resolve the charges against Otero through an agreement with him and the police union, under which he would lose seventeen vacation days as a penalty. The agreement was publicized in a memo signed by Hector Torres, who had succeeded Sweeney as chief of police when Sweeney retired the previous month. The agreement was rendered void because the Board insisted that the matter fell under its jurisdiction.

In November and December 1999, the Board conducted a hearing on the charges against Otero. The Board heard testimony for seven days and received voluminous documentary and tangible evidence. Prentice appeared at the hearing and testified in support of the charges. He stated that when he listened to the microcassette tape, he could make out Otero's "rape your ass" remark.

In April 2000, the Board released a decision. (Defs.' Br. In Supp. of Mot. for Summ.J. Ex. W.) It found that Otero had

---

[1](...continued)
assertion.

4

engaged in "inappropriate and possibly unwelcome sexual contact with Ms. Santossio," and that he had made unwelcome sexual remarks to her, but it did not fully credit all of Santossio's allegations concerning the assault. It suspended Otero from the BPD for sixty days, required him to undergo sexual harassment training at his own expense, and barred him from promotion for one year and until he received certification that he had successfully completed the harassment training.

Santossio and Prentice allege that the defendants retaliated against them for making and supporting the internal complaint against Otero. The alleged acts of retaliation consist of: (1) Torres's decision to place Santossio under Carter, despite her bad working relationship with him; (2) Carter's reduction of her responsibilities by giving her only typing and editing work to do; (3) Carter's testimony before the Board that on the day of the assault he saw Otero leave the file room first, which tended to undercut Santossio's version of what occurred there; (4) Carter's failure to process Santossio's requests for vacation time; (5) Carter's insistence that Santossio file sick reports even though other employees were not required to do so; (6) Torres's failure to prevent Otero's alleged "stalking" of Santossio; (7) Torres's decision to transfer Prentice to a windowless room in the basement despite his multiple sclerosis; (8) Torres's designation of Prentice as "chronically absent"; and

(9) Sweeney's imposition of a five-day suspension on Prentice for referring to a former employee as a "bitch," which was disproportionately harsh compared to penalties handed out to minority officers.

II.  The Complaint

The complaint contains two counts against the moving defendants and they seek summary judgment on both.  The first count refers to the First and Fourteenth Amendments, sexual harassment, and retaliation.  Plaintiffs' memorandum in opposition to the defendants' motion refers to this count as making (1) a § 1983 claim against all defendants for violating Santossio's right to equal protection by subjecting her to a hostile work environment;[2] (2) § 1983 claims against all defendants for retaliating against both plaintiffs in violation of the First Amendment; and (3) a § 1983 claim against all defendants for violating Prentice's right to equal protection by subjecting him to both racial and "class of one" discrimination. The second count alleges that the investigation of Santossio's internal complaint was inadequate and deprived plaintiffs of unspecified constitutional rights.  Plaintiffs do not refer to

---

[2] This count also refers to Santossio's federal statutory right to be free from unlawful gender discrimination, and thus implicitly to Title VII, but plaintiffs' memorandum in opposition makes it clear that no Title VII claim is actually presented.

this count in their memorandum.[3]

III. Discussion

Summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must review the record as a whole, credit all evidence favoring the nonmovant, give the nonmovant the benefit of all reasonable inferences, and disregard all evidence favorable to the movant that a jury would not have to believe. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000). Summary judgment should be granted sparingly in civil rights cases presenting issues of intent. In a proper case, however, summary judgment helps conserve judicial and litigant resources because, if there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law, a verdict in favor of the nonmovant could not be sustained.

A. Santossio's Federal Claims

1. Gender discrimination

Plaintiffs claims that all the moving defendants violated Santossio's equal protection right to be free from gender discrimination in the workplace by subjecting her to a hostile

---

[3] The third and fourth counts allege claims for intentional and negligent infliction of emotional distress, respectively. These claims are against Otero only and thus are not the subject of the defendants' motion for summary judgment.

7

work environment. This claim requires proof of sexual harassment that was sufficiently severe and pervasive to alter the conditions of her employment. <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993).

Plaintiffs point to a variety of actions by Torres, Studivant, Carter and Sweeney that they say created a hostile work environment for Santossio. However, in only one case was the improper conduct sexual in nature, and plaintiffs do not assert that any of the remaining actions were based on Santossio's gender or differed from the treatment accorded to similarly situated males. On the contrary, they allege that these actions constituted retaliation for Santossio's complaint against Otero. Thus, this conduct is properly considered under the rubric of Santossio's retaliation claim.

The only conduct that could form the basis for a gender discrimination claim is Otero's alleged harassment of Santossio, including the assault, the stalking, and several remarks he made to her. This alleged conduct was certainly sexual in nature and a reasonable jury could consider it "severe and pervasive harassment." However, of the moving defendants, the only one that could have any potential liablity for Otero's conduct is the City. Since Otero was Santossio's co-worker rather than her supervisor, the City is liable for his conduct only if it was negligent, that is, if it either provided no reasonable avenue

for complaint or knew of the harassment but did nothing about it. Richardson v. N.Y. State Dep't of Corr. Servs., 180 F.3d 426, 441 (2d Cir. 1999).

Plaintiffs have not presented evidence to create an issue of fact on the City's negligence. The City plainly created a reasonable avenue for complaint in the form of the Board of Police Commissioners, an independent civilian review board. It is undisputed that when the City's agents learned of the harassment, they took steps to prevent and punish it. Sweeney undertook a prompt investigation of Santossio's complaint, transferred Otero from her presence about thirty days later, and simultaneously brought charges against him (on Studivant's recommendation). The Board of Police Commissioners held seven days of hearings on the complaint, considered voluminous documentary evidence, and imposed a penalty on Otero that was not unreasonably small. Thus, defendants are entitled to summary judgment on this claim.[4]

2. Retaliation

Plaintiffs also allege that defendants retaliated against Santossio for making her internal complaint, in violation of her

---

[4] While plaintiffs may consider the penalty (suspension for sixty days, sexual harassment training at his own expense, and a one-year promotion ban) insufficient for the offense, it does not show that the City provided no reasonable avenue for complaint or refused to act when made aware of Santossio's complaint. In addition, the Board did not base its penalty on a finding that all of Santossio's allegations were true.

9

free speech rights under the First and Fourteenth Amendments. To establish free speech retaliation, a plaintiff must show that the speech at issue involved a matter of public concern. Connick v. Myers, 461 U.S. 138, 147-48 (1983). In this Circuit, an internal complaint about sexual harassment is not speech on a matter of public concern if the complaint involves only the plaintiff's own work situation. Saulpaugh v. Monroe Community Hospital, 4 F.3d 134, 143 (2d Cir. 1993). It is undisputed that Santossio's internal complaint against Otero involved only her own work situation. Thus, summary judgment must be granted on this this claim as well.[5]

### 3. Inadequate investigation and punishment

Plaintiffs' complaint alleges that defendants deprived them of unspecified constitutional rights by conducting an inadequate investigation of the alleged assault and imposing insufficient discipline on Otero. These allegations do not state a § 1983 claim because the United States Constitution does not grant plaintiffs a right to an adequate investigation or adequate after-the-fact punishment. DeShaney v. Winnebago County Dept. of Soc. Servs., 489 U.S. 189, 195 (1989) (Due Process Clause does

---

[5] Plaintiffs contend that this case involves a matter of public concern in that they accuse the moving defendants of trying to protect Otero from discipline because he is a minority officer and member of the Guardians organization. But no such issue of racial favoritism was raised by Santossio's internal complaint.

10

not require the state to protect the life, liberty, and property of its citizens against invasion by private actors); <u>Sattler v. Johnson</u>, 857 F.2d 224, 227 (4th Cir. 1988) (there is no constitutional right to have a perpetrator prosecuted); <u>Gomez v. Whitney</u>, 757 F.2d 1005, 1006 (9th Cir. 1985) (courts have not recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved). Nor do plaintiffs allege facts that would create an equal protection claim for failure to investigate this complaint as adequately as other complaints. <u>See</u> <u>Levin v. Harleston</u>, 966 F.2d 85, 90-91 (2d Cir. 1992). Thus, summary judgment must be granted on this claim.

    B.   <u>Prentice's Claims</u>

Plaintiffs also allege that defendants retaliated against Prentice for testifying in Santossio's favor during the Board hearing on her internal complaint. Defendants argue correctly that none of the legal bases that plaintiffs assert for this claim are viable. This Circuit does not recognize a retaliation claim as such under the Equal Protection Clause. <u>Bernheim v. Litt</u>, 79 F.3d 318, 323 (2d Cir. 1996). Prentice cannot claim retaliation under the First Amendment because his speech dealt only with a single colleague's work situation and thus is not speech on a matter of public concern. <u>See</u> <u>Nonnenmann v. City of New York</u>, 174 F. Supp. 2d 121, 136 (S.D.N.Y. 2001). Many of the facts presented would be relevant to a Title VII retaliation

claim, but neither the complaint nor the memorandum makes such a claim.

Plaintiffs' alternative argument that the same facts support an equal protection claim is unavailing. Prentice has not stated a claim for racial discrimination under § 1983 because he has not argued that he was treated differently from a nonwhite person with whom he was similarly situated in all material respects. See Graham v. Long Island R.R., 230 F.3d 34, 39-40 (2d Cir. 2000).[6] Nor has he stated a "class of one" equal protection claim against Sweeney for imposing an unusually heavy penalty on him for referring to an ex-employee as a "bitch." In this Circuit, Prentice can prevail on such a claim only if he shows that Sweeney treated him differently from similarly situated persons without a rational basis and that the disparate treatment was intentional. Giordano v. City of New York, 274 F.3d 740, 751 (2d Cir. 2001). Plaintiffs provide Prentice's deposition testimony to the effect that the five-day suspension was more severe than penalties imposed on others in similar cases. However, they present no evidence that the allegedly inconsistent penalties were imposed by Sweeney or by any other defendant, or that Sweeney's alleged disparate treatment of Prentice was

---

[6] The failure to prosecute David Daniels, to which plaintiffs refer to show racial discrimination, involved a very different set of facts. In other cases cited to show that Sweeney imposed a harsher penalty on Prentice than on other employees, plaintiffs fail to specify the race of the similarly situated employees.

12

intentional. Thus, summary judgment against Prentice's claims is also appropriate.

IV. Conclusion

Accordingly, defendants' motion for summary judgment [Doc. #46] is granted. Counts one and two of the complaint are dismissed with prejudice. This leaves only the claims against Otero in counts three and four, which are state law claims. The Court declines to exercise supplemental jurisdiction over these claims, which are dismissed without prejudice to refiling in state court. The Clerk may close the file.

So ordered.

Dated at Hartford, Connecticut this 28th day of September 2004.

_____
Robert N. Chatigny
United States District Judge

13

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CATHERINE SANTOSSIO, ET AL.,  :
:
v.  : CASE NO. 3:01CV1460 (RNC)
:
CITY OF BRIDGEPORT, ET AL.,  :

## JUDGMENT

This action having come on for consideration of defendants' City of Bridgeport, Robert Studivant, Arthur Carter, Thomas Sweeney, and Hector Torres motion for summary judgment before the Honorable Robert N. Chatigny, United States District Judge, and

The Court having considered the motion and the full record of the case including applicable principles of law, and having filed a ruling and order granting the motion, and further

The Court having dismissed counts one and two of the complaint with prejudice, and further

The Court having declined to exercise supplemental jurisdiction as to the only remaining claims against defendant Otero in counts three and four, which were dismissed without prejudice to refiling in state court, it is hereby

ORDERED, ADJUDGED and DECREED that the judgment be and is hereby entered in favor of the defendants.

Dated at Hartford, Connecticut, this 30th day of September 2004.

KEVIN F. ROWE, Clerk

By_____
Linda I. Kunofsky
Deputy Clerk

EOD _____